## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JEFFREY ANTHONY JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-cv-03007-AJB** |
| CAROLYN W. COLVIN, | : | |
| *Acting Commissioner* | : | |
| *Social Security Administration*, | : | |
| | : | |
| Defendant. | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Jeffrey Anthony Johnson ("Plaintiff") brought this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review

of the final decision of the Acting Commissioner of the Social Security Administration

("the Commissioner") denying his application for Disability Insurance Benefits

("DIB") under the Social Security Act.[2]  For the reasons below, the undersigned

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Dkt. Entries dated 11/19/2014 & 11/20/2014).  Therefore, this Order constitutes a final Order of the Court.

[2]     Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income ("SSI") Benefits

**REVERSES** the final decision of the Commissioner **AND REMANDS** the case to the Commissioner for further proceedings consistent with this opinion.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 30, 2010, alleging disability commencing on June 30, 2008. [Record (hereinafter "R") 120-23]. Plaintiff's applications were denied initially and on reconsideration. [*See* R72-77, 80-82]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [R84-85]. An evidentiary hearing was held on June 13, 2012. [R26-52]. The ALJ issued a decision on August 15, 2012, denying Plaintiff's application on the ground that he had not been under a "disability" from June 30, 2008, the alleged onset date, through the date of the decision. [R14, 22]. Plaintiff sought review by the Appeals Council,

---

for the disabled. Title XVI claims are not tied to the attainment of a particular period of insurance disability. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)). In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

2

and the Appeals Council denied Plaintiff's request for review on December 4, 2013, making the ALJ's decision the final decision of the Commissioner.  [R5-8].

Plaintiff then filed suit in this Court on September 18, 2014, seeking review of the Commissioner's decision.  [*See* Doc. 1].  The answer and transcript were filed on April 15, 2015.  [*See* Docs. 8, 9].  On May 18, 2015, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 12], and on June 17, 2015, the Commissioner filed a response in support of the decision, [Doc. 13].[3] The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STATEMENT OF FACTS[4]

### A.    *Background*

Plaintiff was born on October 13, 1961, and therefore was forty-six years old at the time of his alleged disability onset and fifty years old on the date of the ALJ's decision.  [R22, 120].  He had completed two years of college.  [R40, 137].  Plaintiff

---

[3]    Plaintiff did not file a reply brief, and neither party requested oral argument.  (*See* Dkt., *passim*).

[4]    In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal.  [*See* Docs. 12, 13].

AO 72A
(Rev.8/8
2)

alleged disability due to depression; stress; arthritis; carpal tunnel syndrome; gastrointestinal problems; knee, hip, back and neck pain; leg numbness; and weakness and lethargy caused by medication. [R29, 137, 186].

### B.    Lay Testimony

At the hearing before the ALJ, Plaintiff complained of constant pain in his left hip, right knee, and lower back. [R30-31]. Plaintiff testified that he had difficulty washing dishes after "maybe five to ten minutes" due to his hands cramping up; that he could not lift a gallon of milk; that he could walk an hour before needing a break; and that he could stand for thirty to forty-five minutes before needing to sit down. [R32-34, 37]. He further indicated that he spends most of his day lying down due to pain and weakness. [R34]. Plaintiff reported that he had been prescribed pain medication in 2010 but because he did not have insurance, he was taking over-the-counter medication. [R42].

Plaintiff stated that he had last worked in 2008, doing warehouse work. [R41]. He testified that it was a temporary job that reached its end and that he had not sought work since then because he started experiencing health problems. [R41].

4

### C.    Administrative Records

In an adult function report dated September 27, 2010, Plaintiff reported that he lived in a motel with his wife. [R150-57].  He stated that on a typical day, he would try to make breakfast, then lunch, then dinner, and would read the newspaper, use his computer, try to exercise, and try to take a shower. [R151].  He reported that he did the cooking, laundry, ironing, cleaning, and shopping. [R151-52].  He stated that he shopped twice a week, for two to three hours at a time. [R153].  He said that he struggled with his personal care because of pain and side effects of his medication. [R151].  He also indicated that he could go out alone and could walk, ride in a car, and use public transportation but could not drive because he did not have a license. [R153]. He reported that he had been prescribed braces for his knee and wrist for use every day.

5

[R156].  He stated that his medications included amitriptyline,[5] propoxyphene,[6] diclofenac,[7] and naproxen.[8]  [R157].

In an adult function report dated February 21, 2011, Plaintiff reported the same living situation.  [R178-85].  He stated that he did not know what he did all day and that his medication affected his sleep.  [R179].  He also stated that he had no problems with personal care; that he prepared meals on a daily basis; and that he had no problems

---

[5]      Amitriptyline is a tricyclic antidepressant.  It works by increasing the amounts of certain natural substances in the brain that are needed to maintain mental balance.  MedlinePlus, Amitriptyline, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html (last visited 3/28/16).

[6]      Propoxyphene is a pain mediation that was removed from the market in December 2010 because of the potential to cause deadly heart disturbances.  MedlinePlus, Propoxyphene Overdose, https://www.nlm.nih.gov/medlineplus/ency/article/002537.htm (last visited 3/28/16).

[7]      Diclofenac is an anti-inflammatory used to relieve mild to moderate pain.  MedlinePlus, Diclofenac, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a689002.html (last visited 3/28/16).

[8]      Naproxen is used to relieve pain, tenderness, swelling, and stiffness.  *See* MedlinePlus, Naproxen, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last visited 3/28/16).

6

cleaning, ironing, or doing laundry.  [R179-80].  He also stated that trazodone[9] had

been added to his medications.  [R185].  His other responses were generally the same

as in his September 2010 report.  [R178-85].

### D.    Medical Records

Plaintiff presented to Vine Hill Community Clinic on May 12, 2010, with

complaints of left-hip pain, right-knee pain, and numbness in both arms.  [R194].  He

reported that the arm and hand numbness had been going on for two months, the

left-hip pain had started six months earlier, and the right-knee pain related to an injury

from the 1980s. [R194].  Upon examination, a moderate amount of swelling was noted

on the right knee, and there was obvious deformity of that knee, but no instability,

subluxation, or laxity; he walked with a steady gait; and he demonstrated full strength

in all extremities and normal deep tendon reflexes and coordination.  [R195].  It was

noted that Plaintiff asked "numerous questions about where to go and what to do" to

obtain disability benefits.  [R194-95].  The attending nurse assessed joint pain,

_____

[9]    Trazodone is a serotonin modulator used to treat depression.  *See* MedlinePlus, *Trazodone*, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html  (last  visited 3/28/16).

AO 72A
(Rev.8/8
2)

prescribed Voltaren 75,[10] and told Plaintiff that the clinic did not provide disability examinations.  [R195].

On June 30, 2010, Plaintiff presented to Nashville General Hospital Clinic with complaints of right-knee pain, left-hip pain, and numbness and tingling in both hands.  [R211].  Orthopedist Ronald Baker, M.D., evaluated Plaintiff's complaints.  [R211].  Plaintiff stated that the right-knee pain had been present for several years and that he remembered injuring it while playing basketball in college.  [R211].  Plaintiff also reported that the hip pain had been present for over a year and that the numbness and tingling in his hands had also been going on for a number of years.  [R211].  Upon questioning, Plaintiff admitted to drinking a six-pack of beer each night.  [R212].

Upon examination, it was noted Plaintiff had an antalgic gait with anteromedial and lateral joint line tenderness and a large amount of effusion of the right knee.  [R212].  There was patellofermoral crepitus present and motor strength was 4+/5 on full knee extension.  [R212].  The left hip was noted to have decreased range of motion and mild tenderness.  [R212].  There was mild decrease in neck extension combined with lateral flexion and a positive carpal tunnel compression test bilaterally.  [R212].

---

[10]   Voltaren is a brand name for diclofenac.  MedlinePlus, Diclofenac, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a689002.html  (last   visited  3/28/16).

8

AO 72A
(Rev.8/8
2)

There was also decrease in perception involving the median nerve distribution. [R212]. X-rays showed moderate degenerative joint disease in the left hip and moderate-to-severe degenerative joint disease involving the right knee, with obliteration of the lateral joint line interval. [R212]. There was also osteophyte formation present, and imaging was consistent with osteoarthritis. [R212, 219-20].

Dr. Baker assessed left-hip degenerative joint disease, right-knee moderately severe degenerative joint disease, rule-out bilateral carpal tunnel syndrome, and rule-out diabetes mellitus. [R213]. Dr. Baker aspirated the right knee, administered a steroid injection, provided a brace for the right knee, and prescribed naproxen and Darvocet[11] for pain. [R213]. He also provided Plaintiff with splints to be worn at night and recommended follow-up in six weeks for reevaluation of the hand symptoms and to discuss possible surgical intervention for carpal tunnel syndrome or for consideration of an EMG.[12] [R213].

_____

[11]     Darvocet is the brand name of a combination product containing acetaminophen and propoxyphene. It is an opioid medication used to relieve mild to moderate pain. Medication Guide, Darvocet-N 50 & 100, http://www.fda.gov/downloads/Drugs/DrugSafety/UCM187067.pdf (last visited 3/28/16).

[12]     "EMG" is an abbreviation for electromyogram. 569 *PDR Med. Dictionary* (1st ed. 1995). Electromyography measures the response of muscles and nerves to electrical activity. It is used to help determine muscle conditions that might be causing

On August 19, 2010, Plaintiff presented to Nandakumar Vittal, M.D., at the Nashville General Hospital Clinic for evaluation of the numbness in his hands. [R214]. Plaintiff complained of numbness in both arms and hands, neck pain, and low-back pain, but he denied weakness or difficulty with his legs. [R214]. Upon examination, it was noted Plaintiff presented with mild discomfort on neck movement and that on reflex there was absence of right biceps brachioradialis and triceps reflexes. [R214]. He was noted to a have a mild Hoffmann's sign,[13] and his gait was noted to be "fairly normal." [R214]. Dr. Vittal suspected mild cervical myeloradiculopathy, probably from degenerative disk disease. [R214]. It was recommended that Plaintiff undergo an EMG nerve-conduction study for both upper extremities, as well as a CT scan of his neck. [R214-15].

A CT scan of the cervical spine performed in September 2010 showed no gross fracture or malalignment but did show moderate-to-severe multilevel degenerative

_____

muscle weakness, such as nerve disorders. KidsHealth, Electromyography, http://kidshealth.org/parent/general/sick/emg.html (last visited 3/28/16).

[13] A positive Hoffmann's sign may indicate damage above the C5 or C6 level of the cervical spine and is often associated with noticeable weakening of the grip in the hands. HealthCentral, MS Signs v. Symptoms: What is the Hoffmann Reflex?, http://www.healthcentral.com/multiple-sclerosis/c/19065/129802/reflex/ (last visited 3/28/16).

AO 72A
(Rev.8/8
2)

changes resulting in multilevel central canal and neural foraminal narrowing bilaterally. [R221].  It was noted that a component of the central canal stenosis was likely congenital in nature, with significant degenerative changes likely contributing. [R221]. It was also noted that there was an incidental probable C3-4 disc bulging. [R221].

On November 2, 2010, Plaintiff presented for a consultative examination with Harry Wright, M.D. [R197]. He complained of osteoarthritis in both hands and wrists, his right knee, left hip, and neck.  [R197].  He indicated pain and numbness and weakness of his bilateral hands.  [R198].  He further indicated stress, with difficulty sleeping and depression.  [R198].  Plaintiff denied drinking alcoholic beverages. [R199].

Upon examination, it was noted that Plaintiff's gait, station, and mobility were normal but that he got out of the chair and on and off the examining table with difficulty and using his hands. [R200]. His grip strength was thirty pounds in his right hand and fifty pounds with his left hand, and he lifted ten pounds with each hand on a one-time basis. [R200]. It was further noted that Plaintiff could grasp and manipulate objects; had no abnormality of the neck, back, or extremities; demonstrated full strength for all major muscle groups, except bilateral grip strength reduced to 4+/5; had reduced range of motion in the wrists and left hip; had normal range of motion for the spine,

11

shoulders, elbows, hands, fingers, knees, and ankles; had normal reflexes for all extremities; and had negative Tinel's Sign, Phalen's Maneuver, and Romberg and straight-leg raising tests.  [R200-02].

Dr. Wright diagnosed bilateral hand and wrist pain, associated with neck pain and carpal tunnel syndrome vs. cervical radiculopathy; possible rheumatoid arthritis; left-hip pain, likely osteoarthritis, possibly rheumatoid arthritis; right-knee pain, likely osteoarthritis and possibly rheumatoid arthritis; and depression/anxiety.  [R203]. Dr. Wright opined that Plaintiff could sit with normal breaks and that, because of pain and weakness in his hip, knee, wrists, and hands, Plaintiff retained the capacity to occasionally lift and/or carry for up to one-third of an eight-hour workday a maximum of less than ten pounds; to frequently lift and/or carry from one-third to two-thirds of an eight-hour workday a maximum of less than ten pounds; and to stand and/or walk for a total of about six hours in an eight-hour workday.  [R203].

On November 4, 2010, Plaintiff reported for a psychological consultative examination with Kathryn B. Sherrod, Ph.D. [R205-09].  It was noted that Plaintiff's gait was "fine" and that "he sat and stood with relative ease." [R205]. Plaintiff told the consultative psychologist that a friend drove him to the consultative exam, but he was seen unlocking a car and driving himself after his evaluation. [R205]. He also reported

12

that he did not drink alcohol.  [R205].  On the mental status examination, he was noted as worried and depressed.  [R207].  His knowledge of general information was variable, and his abstract reasoning was average.  [R207].  It was suspected that Plaintiff was overstating his mental-health problems.  [R207].  He reported a lack of energy and was estimated to be functioning in the average range of intelligence.  [R208].  He received an Axis I diagnosis of adjustment disorder with mixed anxiety and depressed mood and rule-out alcohol abuse.  [R208].  Plaintiff was assigned a GAF[14] score of 61.  [R208].

On December 21, 2010, James Moore, M.D., completed a Physical Residual Functional Capacity ("RFC") Assessment.  [R223-36].  Counter to Dr. Wright's opinion, Dr. Moore found that Plaintiff could "occasionally" lift or carry less than twenty pounds and could sit only six hours in an eight-hour workday.  [R238].  Dr. Moore also opined that due to his arthritis, Plaintiff should avoid climbing ladders, ropes, and scaffolds.  [R239].  On March 11, 2011, state agency review physician Susan

---

[14]     The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) that considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness.  *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Revision, 2000).  A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.* at 34.

13

L. Warner, M.D., reviewed Plaintiff's file and affirmed Dr. Moore's assessment. [R247].

### E.   Vocational-Expert Testimony

The vocational expert ("VE") testified that Plaintiff had no past relevant work. [R45].  When asked about the capabilities of a person of Plaintiff's age, education, and work experience who could lift, push, pull, and carry up to twenty pounds occasionally[15]; could sit/stand and/or walk six hours; could occasionally climb, but never on ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch and/or crawl; and would need to avoid concentrated exposure to hazards, the VE testified that the person could work as a cashier, a fast-food worker, or a production assembler.  [R45-46].  When asked about the capabilities of the same person, if that person also needed a sit/stand option, could frequently reach overhead, and could frequently perform fine manipulation, the VE testified that the cashier positions would decrease by about fifty percent, production assembler would decrease by about seventy-five percent, and the person could not work as a fast-food worker, but the person could work as a information clerk.  [R46-47].

---

[15]     The Agency defines "occasionally" as "occurring from very little up to one-third of the time."  Social Security Ruling ("SSR") 83-10.

14

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.    The claimant has not engaged in substantial gainful activity since June 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: osteoarthritis of the right knee and left hip; degenerative changes of the cervical spine; and, bilateral wrist symptoms (carpal tunnel syndrome versus cervical related) (20 CFR 404.1520(c)).  The claimant does not have a "severe" mental impairment.

. . .

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he needs the option to alternate positions between sitting and standing. He can frequently, but not constantly, reach overhead and frequently, but not constantly, perform fine manipulation.  The claimant can never climb ladders, ropes or scaffolds.  The claimant can occasional[ly] climb ramps and stairs and occasionally balance, stoop, kneel, crouch and crawl.  He should avoid concentrated

15

exposure to hazards (i.e., moving/dangerous machinery, unprotected heights, etc.)

. . .

5.    The claimant has no past relevant work (20 CFR 404.1565).

. . .

6.    The claimant was born on October 13, 1961, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

7.    The claimant has a high school education and two years of college. He is able to communicate in English (20 CFR 404.1564).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

. . .

10.   The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2008, through the date of this decision (20 CFR 404.1520(g)).

[R15-23].

The ALJ explained that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. [R20]. First, she noted that although Plaintiff alleged disability beginning in 2008, he sought only cursory treatment during the time he was insured and that even after his insurance lapsed, it was not reasonable that he would not have been making every effort to obtain treatment if he were as limited as he alleges. [R20]. Second, she explained that she found Plaintiff not to have been completely forthright, based on the consultative psychological examiner's notes stating that Plaintiff appeared to have lied about driving to his appointment, medical notes indicating conflicting reports of his alcohol use, Plaintiff's allegations that he suffered side effects of medication despite having received prescriptions only twice in 2010, and his testimony at the administrative hearing, where he initially attempted to minimize his activities before admitting to a fairly wide range of daily activities. [R20].

The ALJ also summarized the other evidence of record and noted in particular that "Dr. Wright, the examining consultative physician, opined the claimant can occasionally lift a maximum of 10 less than pounds [sic]; stand and/or walk for a total of six hours in an eight-hour day; and, sit without restriction." [R20]. The ALJ further

17

observed that upon review of the objective medical evidence and Dr. Wright's report, state-agency reviewing physicians Drs. Moore and Warner opined that while Plaintiff was precluded from any heavy, strenuous work, he was not precluded from a near-full range of light work activity.  [R20].  The ALJ went on to find "that the state agency physician has produced a credible assessment of the claimant's residual functional capacity"; stated that she was "generally persuaded to accept it"; and adopted Dr. Moore's opinion, albeit with an additional sit/stand option and additional manipulative limitations.  [R17, 20-21, 237-45].

The ALJ then explained that because Plaintiff had no past relevant work, she relied on the VE's testimony to find that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy, such as representative occupations of: cashier, light and unskilled (Dictionary of Occupational Titles ("DOT") # 211.462-010); production assembler, light and unskilled (DOT # 706.687-010); and information clerk, light and unskilled (DOT # 237.367-018).  [R21-22].

18

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274,

19

1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered

AO 72A
(Rev.8/8
2)

disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

21

of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

22

substantially supportive evidence" of the ALJ's decision.   *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff asserts two allegations of error: (1) the ALJ failed to afford proper weight to the medical opinion of examining-physician Dr. Wright and failed to provide any reasons for her rejection of the opinion, and (2) the ALJ failed to properly apply the Eleventh Circuit's standard for evaluating complaints of pain.  [Doc. 12].  The Commissioner, in response, contends that the ALJ applied the proper legal standards and that substantial evidence supports her conclusions.  [Doc. 13].

Were the ALJ's application of the pain standard the only allegation of error in this matter, the decision would be due to be affirmed.  As Plaintiff points out, the Eleventh Circuit has established a pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms.  [*See* Doc. 12 at 17-19].  The standard requires that the claimant satisfy two parts of the test, by showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively

23

determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *accord Foote*, 67 F.3d at 1560.

The pain standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility." *Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1189 n.1 (N.D. Ala. 2006). Then, "[i]f the pain standard is satisfied, the ALJ must consider the plaintiff's subjective complaints." *James v. Barnhart*, 261 F. Supp. 2d 1368, 1372 (S.D. Ala. 2003) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). In doing so, the ALJ considers the lay evidence, medical opinions, and objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain or other symptoms; other treatment received for the pain or other symptoms; any measures used to relieve the pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). When a claimant's subjective testimony is supported by medical evidence that satisfies the pain standard, he may be found disabled. *Foote*, 67 F.3d at 1561; *Holt v. Sullivan*, 921 F.2d 1221, 1223

24

(11th Cir. 1991).  If the ALJ determines, however, that claimant's testimony is not credible, "the ALJ must show that the claimant's complaints are inconsistent with his testimony and the medical record," *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1368 (N.D. Ga. 2006), and if the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility, *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987).  This credibility determination does not require the ALJ to cite to particular phrases or formulations, but it also cannot be a broad rejection so as to prevent the courts from determining whether the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005).  After considering a claimant's complaints of pain or other subjective symptoms, the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence.  *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1994).

25

Similarly, SSR 96-7p[16] requires that the ALJ first consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms.   SSR 96-7p, 1996 WL 374186 at *1.   The ALJ must then consider whether the condition could reasonably be expected to produce the individual symptoms and must evaluate the intensity, persistence, and functionally limiting effects of these symptoms "to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id*.   The ruling further provides that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' " *Id*. at *2.   Rather,

---

[16]     Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *see also Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)).  Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *see also Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

AO 72A
(Rev.8/8
2)

SSR 96-7p requires that the decision contain "specific reasons" for the credibility finding, supported by the evidence in the case record, and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual statements and the reasons for that weight." *Id*. The ALJ's reasons for the credibility finding "must be grounded in the evidence and articulated in the determination or decision." *Id*. at *4.

Here, contrary to Plaintiff's position, it is clear that the ALJ did not summarily reject his subjective testimony. After reciting the pain standard, the ALJ went on to summarize the evidence of record. [R17-19]. She then found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible, and she enumerated why Plaintiff's "testimony [was] largely discredited": although Plaintiff alleged disability beginning in 2008, he sought only cursory treatment during the time he was insured; even after his insurance lapsed, it was not reasonable that he would not have been making every effort to obtain treatment if he were as limited as he alleges; Plaintiff had misrepresented his ability to drive; he provided conflicting statements as to his alcohol use; his allegations that he suffered side effects of medication were undermined by the

27

lack of any prescriptions since 2010; and at the administrative hearing, Plaintiff initially attempted to minimize his activities before admitting to a fairly wide range of daily activities.   [R20].   The ALJ also explained that the opinions of the state agency reviewing physicians supported an RFC even less restrictive than the RFC appearing in her decision.   [R20-21].   The Court therefore finds that the ALJ articulated specific evidence-based reasons for her credibility finding and thus applied the proper legal standard in reaching her credibility determination.

The question remains, however, whether the ALJ's reliance on the opinions of the state agency review physicians over the more restrictive opinion issued by examining physician Dr. Wright nevertheless precludes a finding that the RFC is supported by substantial evidence.   After careful review of the briefs, the ALJ's decision, and the case record, the Court concludes that the ALJ's treatment of Dr. Wright's opinion does constitute reversible error.

In support of his argument that the ALJ erred in her consideration of Dr. Wright's opinion, Plaintiff points out that Dr. Wright opined that Plaintiff could occasionally lift a maximum of less than ten pounds because of pain and weakness in his hip, knee, wrists, and hands, [R203, 212, 221], yet the ALJ found that Plaintiff was capable of a limited range of light work, [R17], which is defined in the regulations as

involving "lifting no more than *20* pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567(b). [Doc. 12 at 8-16 (emphasis added)]. Plaintiff contends that because the ALJ did not state the weight she assigned to Dr. Wright's opinion or state why she did not fully credit the lifting restrictions, the ALJ's decision is marred by reversible error. [*Id*. at 8, 15-16].

In response, the Commissioner argues that substantial evidence supports the ALJ's decision not to adopt the lifting restrictions assessed by Dr. Wright because the restrictions conflicted with Dr. Wright's examination findings and other medical and opinion evidence, and she contends instead that substantial evidence supports the ALJ's finding that Plaintiff could perform the lifting and carrying requirements of light work. [Doc. 13 at 4-9]. First, the Commissioner points out that unlike the opinion of a treating physician, the opinion of a one-time examiner is not entitled to special deference or consideration, [*id*. at 5 (citing *Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 Fed. Appx. 875, 878 (11th Cir. May 16, 2013))], and that an "ALJ may reject any medical opinion if the evidence supports a contrary finding," [Doc. 13 at 5 (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987))]. Second, the Commissioner recites Dr. Wright's objective findings, describing them as "generally normal" and

29

arguing that "the finding that Plaintiff could lift 10 pounds with each hand actually proves he could lift up to 20 pounds at once." [Doc. 13 at 5-6]. Third, she contends that the lifting restriction Dr. Wright assessed is contrary to the remaining medical evidence in the record, asserting that the remaining medical evidence includes no lifting restrictions; shows only limited treatment commencing approximately two years after the alleged onset date; and shows that treatment records included many normal findings. [*Id.* at 6-8 [citing R194-95, 205, 211-15, 219-21]]. Fourth, the Commissioner points out that the reviewing physicians looked at the entire medical record and concluded that Plaintiff could perform the lifting demands of light work. [Doc. 13 at 8-9 [citing R237-45, 247]]. Fifth, the Commissioner suggests that the ALJ's failure to articulate the weight she assigned to Dr. Wright's opinion does not warrant reversal or remand because the ALJ "fully considered" the opinion and ultimately made an RFC finding that is supported by substantial evidence and is in many ways more restrictive than Dr. Wright's opinion. [Doc. 13 at 9 (citing *Hardman v. Colvin*, No. 3:12-CV-42 (CAR), 2013 WL 3820694, at *6 (M.D. Ga. July 23, 2013))].

The Commissioner evaluates every medical opinion the agency receives, regardless of the source. 20 C.F.R. § 404.1527(c); *cf.* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions

AO 72A
(Rev.8/8
2)

in your case record together with the rest of the relevant evidence we receive.");

SSR 06-03p, 2006 WL 2329939 at *4 ("[T]he [Social Security] Act requires us to

consider all of the available evidence in the individual's case record in every case.").

Thus, both examining and nonexamining sources provide opinion evidence for the ALJ

to consider in rendering a decision.  20 C.F.R. § 404.1527(c), (e).  In determining the

weight of medical opinions, the ALJ must consider: (1) the examining relationship;

(2) the treatment relationship; (3) evidence supporting the conclusions; (4) the

consistency of the opinion with the record as a whole; (5) the medical expert's area of

specialty; and (6) other factors, including the amount of understanding of disability

programs and the familiarity of the medical source with information in the claimant's

case record.  20 C.F.R. § 404.1527(c)(1)-(6).  In assessing the medical evidence, the

ALJ is "required to state with particularity the weight [given] to the different medical

opinions and the reasons therefor."  *Sharfarz*, 825 F.2d at 279.

The opinion of a treating physician must be given substantial or considerable

weight unless "good cause" is shown to the contrary.[17]  *Phillips v. Barnhart*,

---

[17]    Good cause exists when: (1) the treating physician's opinion was not
bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the
treating physician's opinion was conclusory or inconsistent with the doctor's own
medical records. *Phillips*, 357 F.3d at 1241.

31

357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *accord Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  A one-time examining (i.e., consulting) physician's opinion is not entitled to great weight.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam).  However, the opinion of an examining physician is generally entitled to more weight than the opinion of a nonexamining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  Also, in the Eleventh Circuit, "the report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991); *see also Kemp v. Astrue*, 308 Fed. Appx. 423, 427 (11th Cir. Jan. 26, 2009) (per curiam). However, "the opinion of a non-examining physician who has reviewed medical records may be substantial evidence if it is consistent with the well-supported opinions of examining physicians or other medical evidence in the record."  *Hogan v. Astrue*, Civ. Action No. 2:11cv237-CSC, 2012 WL 3155570, at *5 (M.D. Ala. Aug. 3, 2012) (harmonizing Eleventh Circuit cases).  In any event, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (quotation marks omitted).

32

As an initial matter, it is clear that the ALJ erred in her consideration of Dr. Wright's opinion. Dr. Wright was the only examining physician to render an opinion of Plaintiff's limitations, yet the ALJ did not fully credit the lifting limitations Dr. Wright assessed and did not state her reasons for doing so. [*Compare* R17, 20 *with* R203]. The Commissioner's citations to *Crawford* and *Denomme* do not persuade the Court otherwise, as both cases are distinguishable from the matter at hand:  in *Crawford*, the ALJ explained that the opinion of the consultative psychologist was discounted because she was not a medical doctor, her findings were based on the claimant's self-interested assertions, and her opinion was inconsistent with the findings of the treating psychiatrist, *Crawford*, 363 F.3d at 1158, and in *Denomme*, the court concluded that the ALJ's failure to specify the weight given to the opinions of the examiners was harmless because the examiners' findings were credited in the RFC, *Denomme*, 518 Fed. Appx. at 878. Neither situation exists here. [*Compare* R17, 20 *with* R203]. The Commissioner's citation to *Sharfarz* is also unavailing, as the court in *Sharfarz* reversed and remanded the ALJ's decision on the grounds that the ALJ failed to articulate good cause for discounting the treating physician's opinion and erred in concluding that the consulting examiner's opinion was not supported by his medical findings. *Sharfarz*, 825 F.2d at 279-80. Consequently, to the extent that the

33

Commissioner suggests that the ALJ's failure to explain why the examining physician's opinion was not credited was not error, the Court finds no basis for the position in her brief.

Thus, if the ALJ's decision is to be affirmed, it must be because the error is harmless. *See Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) (applying harmless error analysis in Social Security case); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis where the ALJ made an incorrect statement of fact). Generally, an error is harmless in a Social Security case if it "do[es] not affect the ALJ's determination that a claimant is not entitled to benefits." *Young v. Astrue*, No. 8:09-cv-1056, 2010 WL 4340815, at *4 (M.D. Fla. Sept. 29, 2010).

Here, despite the Commissioner's arguments to the contrary, it is not clear that the error was harmless. First, while many of the objective medical findings were in fact in the "normal" range, a significant number of the findings were not: contrary to the Commissioner's recitation of the record, the nurse who tended to Plaintiff in May 2010 noted that although his right knee seemed stable, it was swollen and obviously deformed, [R195]; in June 2010, Dr. Baker noted Plaintiff had an antalgic gait with anteromedial and lateral joint line tenderness and a large amount of effusion of the right knee, with patellofemoral crepitus, tenderness, and decreased range of motion in the

34

left hip, mild decrease in neck extension combined with lateral flexion, a positive carpal tunnel compression test bilaterally, and a decrease in perception involving the median nerve distribution, [R212]; June 2010 x-rays showed moderate degenerative joint disease in the left hip and moderate-to-severe degenerative joint disease involving the right knee, with obliteration of the lateral joint line interval; there was osteophyte formation present; and imaging was consistent with osteoarthritis, [R212, 219-20]; in August 2010, Dr. Vittal noted that Plaintiff displayed mild discomfort with neck, there was absence of right biceps brachioradialis and triceps reflexes, Plaintiff had a mild Hoffmann's sign, his gait was noted to be only "fairly normal," and  Dr. Vittal suspected mild cervical myeloradiculopathy, probably from degenerative disk disease, [R214]; cervical-spine imaging performed in September 2010 showed moderate-to-severe multilevel degenerative changes resulting in multilevel central canal and neural foraminal narrowing bilaterally and incidental probable C3-4 disc bulging, [R221]; and in November 2010, Dr. Wright noted that Plaintiff got out of the chair and onto and off of the examining table with difficulty and using his hands, [R200], and had reduced range of motion in the wrists and left hip, [R202].  Also, the fact that Plaintiff "lifted ten pounds with each hand, *on a one time basis*," [R200 (emphasis added)], does not

35

translate into a finding that Plaintiff could therefore lift or carry twenty pounds for up to one-third of an eight-hour workday,  [*see* R45-47].

Moreover, while the Commissioner's representation that the medical record does not contain any lifting restrictions appears to be correct, it is not axiomatic that the lack of an opinion of limitation means that no limitation exists.  *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (finding that "silence is equally susceptible" to an inference of ability to work or inability to work and that "therefore, no inference should be taken").  It also bears noting that the ALJ does not state that she discounted Dr. Wright's opinion regarding Plaintiff's lifting limitations on the basis of the lack of a lifting limitation in the treatment notes, and it would be improper for the Court to engage in such *post hoc* reasoning.  *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion.  Such an approach would not advance the ends of reasoned decision making.").  It would be similarly improper for the Court to presume *post hoc* that the ALJ's failure to credit Dr. Wright's opinion was based on Plaintiff's limited treatment other normal findings in the treatment records.  *See id.*

Finally, the Court is not persuaded that the ALJ's failure to articulate the weight she assigned to Dr. Wright's opinion is harmless because the RFC is in some ways

36

more restrictive than Dr. Wright's opinion. In *Hardman*, the case relied upon by the Commissioner in support of the argument, the court did indeed affirm the ALJ's decision despite its observation that "the ALJ did not make a formulaic recitation of the weight" he assigned the opinion, but it did so on the grounds that the examining consultant's opinion "did not directly contradict the ALJ's findings" and that any error regarding the opinion was therefore harmless. *Hardman*, 2013 WL 3820694 at *1, 6. Here, in contrast, the RFC *does* directly contradict the ALJ's findings, as full accreditation of Dr. Wright's lifting restrictions would have resulted in a exertional level of "sedentary" rather than "light,"[18] which necessarily limits the numbers of jobs available in the local and national economies, and, considering Plaintiff's age, education, and lack of transferrable skills, could result in a disability determination. *See* Medical-Vocational Grid Rule 201.12.[19]

_____

[18]     While light work involves lifting no more than twenty pounds at a time, sedentary work involves lifting no more than ten pounds at a time. 20 C.F.R. § 404.1567(a)-(b).

[19]     The Medical-Vocational Grids provide administrative notice "of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy)." 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 200.00(b).

37

For all of these reasons, the undersigned concludes that the ALJ reversibly erred in her consideration of the opinion of consulting physical examiner Dr. Wright.  The undersigned therefore **REVERSES** and **REMANDS** the matter for further consideration of Dr. Wright's opinion and, if warranted, revision of the RFC.

## VII.   CONCLUSION

For the reasons above, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this opinion.  The Clerk is **DIRECTED** to enter final judgment in Plaintiff's favor.

**IT IS SO ORDERED and DIRECTED**, this the 28th day of March, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

38